## AUGUSTUS MAGGETT v. E. E. ROBERTS.

*Suit for Penalty—Void Marriage License—Failure of Register
to Record—Appeal.*

1. A blank marriage license, though signed by the Register of Deeds, is not issued until filled up and handed to the person who is to be married, or to some one for him, and, if at the time of such issuance the Register has become *functus officio*, the failure to record it does not render him liable to.the penalty imposed by sections 1818 and 1819 of *The Code*, for failure to record the substance of each marriage license issued.

2. If the filling up and handing the paper previously signed to the party proposing to be married was done, not by the Register but by an agent, and at the time the Register was *functus officio*, the paper would be equally invalid because lacking the signature of a *de facto* Register, and there could be no penalty for not recording it.

3. The presumption is that a marriage license, signed by a Register of Deeds, was issued during his term of office. The burden of proving the contrary is on the party asserting it.

4. A marriage is not invalid because solemnized without a license or under an illegal license.

5. If a party to a marriage is under the age authorized by law, the Register cannot excuse himself from liability because his deputy or agent made proper inquiry, if he did not make the inquiry himself. The trust is personal to him.

6. A ruling in this Court, on a former appeal, that the lower Court ought to have sustained a demurrer to one of the causes of action set up in the complaint, did not warrant that Court in excluding evidence on such cause of action as *res judicata*, but it should have entered judgment sustaining the demurrer, and then might have permitted the plaintiff to amend.

CIVIL ACTION, tried before *Brown, J.*, and a jury, at Spring Term, 1892, of NORTHAMPTON Superior Court.

The plaintiff sought to recover from the defendant, ex-Register of Deeds of said county, the penalties imposed by sections 1818 and 1819 of *The Code*, for breach of official

duty. The complaint alleged three causes of action: (1), failure to record the issuance and the substance of a license alleged to have been issued by defendant, during his term of office, for the marriage of William Parker and Mary Sykes; (2), similar default in relation to the license for the marriage of John Harris and Cintha Garner; (3), the issuing of a license for the marriage of Henry Futrell and Roxana Lassiter, dated during his term of office, without having received or having on file the written consent of the mother of Roxana, who was alleged to be under sixteen years of age. Defendant denied that he had issued the licenses named in the first and second causes of action, and as a defence to the third cause pleaded that it was *res judicata*, setting up the judgment of this Court in State on relation of *Maggett* v. *Roberts*, 108 N. C., 174.

The testimony was to the following effect: That the defendant went out of office as Register of Deeds on the 20th December, 1886; that before the expiration of his term he signed in blank and delivered to several Justices of the Peace marriage licenses to be filled up by them as occasion might require; that the Parker-Sykes license was filled up by the Justice of the Peace who married the parties on the 25th February, 1887, sixty-five days after defendant went out of office; that the Harris-Garner marriage was solemnized the 22d day of December, two days after defendant's term expired; the defendant's name was signed to the license and the words " to J. W. Grant, Esq.," in the body of the license, were in the handwriting of defendant, but the remaining part of the blank was filled out in the handwriting of the Justice, J. W. Grant, who married the parties. It was admitted that there was no record of the issuance or of the substance of the license for either the Parker-Sykes or the Harris-Garner license.

The Court instructed the jury that if the facts testified to were true the license was void; that the Register of Deeds could not delegate such authority while in office, and, if he could do so, such authority terminated with the expiration of his office. Upon the issues submitted the jury found that the defendant did not issue the Parker-Sykes and the Harris-Garner licenses. Testimony as to the Futrell-Lassiter license was excluded upon the ground that the cause of action thereon was *res judicata*, to which plaintiff excepted.

Judgment being rendered for the defendant, the plaintiff appealed.

*Mr. R. B. Peebles*, for plaintiff (appellant).
*Mr. B. S. Gay*, for defendant.

CLARK, J.: When the blank signed by the Register was handed to his agent it was not a marriage license. It was a valueless piece of paper. When filled out by such agent and handed to the party who was to use it, it was then "issued." Should either party named in the license be under eighteen years of age, any inquiry in such respect made by such agent, however diligent and careful, would not absolve the Register from liability by failure himself to make such inquiry, it being a trust personal to him under *The Code*, §§1814, 1816; *Cole* v. *Laws*, 108 N. C., 185.

If at the time the license was issued, *i. e.*, was filled up and given to the party who was to be married, or to some one for him, the person who signed it had then ceased to be Register, the paper would not be a valid license, and whatever deception he might be guilty of, or whatever other liability he might thereby incur, he would not be liable under *The Code*, §§1818, 1819, for failure to record the substance of such paper. If the issue, *i. e.*, the filling up

and handing the paper previously signed to the party proposing to be married, was done not by the Register but by an agent and at that time the Register was *functus officio*, the paper would be equally invalid, because lacking the signature of one then a *de facto* Register, and there could be no penalty for not recording it. The marriage under an invalid license, or with no license, as has been repeatedly held, would be good, if valid in other respects. *The Code*, §1812; *State* v. *Robbins*, 28 N. C., 23; *State* v. *Parker*, 106 N. C., 711. The only effect of marrying a couple without a legal license is to subject the officer or minister to the penalty of $200 prescribed by *The Code*, §1817. *State* v. *Parker* and *State* v. *Robbins, supra*. The presumption is, of course, that the license was issued during the term of office of the person signing it, when it is in evidence that he had been an incumbent of that office. The burden is on the party asserting the contrary.

Applying these principles to our case, the evidence is uncontradicted that the defendant ceased to be Register of Deeds on the 20th of December, 1886, and that the license for the marriage of William Parker and Mary Sykes was on the 25th of February, 1887, filled out and handed to Parker by the minister to whom such blanks, together with others, all signed by the defendant, had been given by the defendant to be used when needed, and for any one desiring to be married.

The marriage was, of course, valid. The minister was liable for the penalty prescribed for marrying without license. The defendant, however, could not be held liable for not recording a paper which, though signed by him, was not a license because issued after he was *functus officio*.

The marriage of John Harris and Cintha Garner took place on December 22, 1886, two days after the defendant went out of office. The presumption was that the license

was issued when the defendant was in office and, if so, he was liable to the penalty sued for on account of his failure to record the substance of the license at the time of issue. The mere fact that the marriage was solemnized two days after the date when the defendant went out of office was not sufficient evidence of itself and unsupported to go to the jury to rebut the presumption that it was legally issued, *i. e.,* during his term. It was error to refuse the plaintiff's prayer to that effect.

When this case was here on a former appeal, 108 N. C.,· 174, the Court held, citing *Bowles* v. *Cochran,* 93 N. C., 398, that the Court below should have sustained the demurrer to the third cause of action for failure to allege that the license to a person under eighteen years of age was issued " knowingly or without reasonable inquiry." When the case subsequently came up for trial below, the Court excluded any evidence upon that cause of action upon the ground that it was *res judicata.* This was error. The Court below, in accordance with the opinion here, should have reversed the former action of that Court and have entered judgment sustaining the demurrer, and thereupon the plaintiff might have been permitted to amend by inserting those words. *The Code,* §§272 and 273. There was no adjudication here beyond the ruling that there was error in not having sustained the demurrer below. Even had the Court below, either before or after the appeal, sustained the demurrer and dismissed the action, this judgment, being not upon the merits but merely for omission of a material allegation in the complaint, could not be pleaded as *res judicata* to a new action brought to enforce the same right. Gould on Pleading, 445. *A fortiori* there is not *res judicata* when the same action is pending and no judgment on the demurrer has yet been entered up. The omission of the material allegation that the license was issued for the mar-

riage of a person under eighteen years of age, " knowingly and without reasonable inquiry," seems to have been due to the fact that the copy of the license appended to the complaint, as an exhibit, recites the age of the female at sixteen. This raises a very strong presumption that the license was issued " knowingly," but it is not conclusive, as it may be shown that such entry was inadvertent, or was a mere clerical error, or that the girl, in fact, was over eighteen. At any rate, it is not an allegation, as required, but a mere inference to be drawn, and therefore demurrable on that ground as argumentative. As the case goes back, however, it is proper to say that an amendment now by the Court below to make the allegation direct, if asked for by the plaintiff, would be in accordance with the spirit of *The Code*, especially as the plaintiff, by taking a nonsuit as to that cause of action, could bring a new action for the same cause within a year with the omitted words supplied in the new complaint.

PER CURIAM.                            Error.