EVERINE BRAAFLAT v. MINNEAPOLIS & NORTHERN ELEVATOR COMPANY.[1]

October 30, 1903.

Nos. 13,685—(52).

**Contributory Negligence.**

> *Held,* in a personal injury action brought by an administratrix, that from the testimony it conclusively appeared that the deceased was guilty of gross contributory negligence, which would preclude a recovery.

Action in the district court for Clay county by plaintiff, as administratrix of the estate of Nels T. Braaflat, deceased, to recover $5,000 for the death of decedent. The case was tried before Baxter, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*H. Steenerson* and *Charles Loring,* for appellant.

*J. W. Mason,* for respondent.

COLLINS, J.

Action by an administratrix to recover for injuries received by her husband while in defendant's employ, which resulted in his death.

The deceased had had some eight years' experience in and about grain elevators constructed similar to the one in which he was injured, and for three years before the accident he had been the manager and in charge of this particular structure, which was of small size and capacity. A bare statement of the facts seems to be all that is necessary in order to sustain the ruling of the court below, whereby a verdict was ordered for the defendant. The office, which was also the engine room

[1] Reported in 96 N. W. 920.

—a small gasoline engine being used therein—was on what was called the "working floor" of this building. Grain was received from wagons on the outside into a hopper, and from thence it ran down into the bottom of a pit. It was then carried upward to the working floor by means of cups attached to a belt which ran through what is termed a "boot." At the lower end of the boot the belt turned on a pulley attached to and set in motion by a shaft. One end of this shaft extended into the pit some sixteen inches beyond its bearings, and on this end, close to the bearings, was a collar fastened with a set-screw to keep the shaft in place. The set-screw protruded from one-half to three-quarters of an inch above the collar, and it was five-eighths of an inch in diameter. The pit was something over eight feet long, five feet wide, and about three or four feet deep.

When the cup belt was in operation the grain would frequently accumulate at the bottom of this pit, and then clog up and stop the moving belt so that the grain had to be cleaned away and the motion regulated, usually several times each day. The method of doing this seems to have been for the deceased, or one of his subordinates, to get over into the pit, where he would have to occupy a space not more than twenty-four inches square, on one side or the other of the shaft. To put the cups in motion, he would then have to stoop in this limited space and push away the clogged grain by reaching around and under the shaft. The danger in attempting this with the shaft in motion, running, as it usually did, fifty revolutions to the minute, seems to be perfectly apparent; and it is almost incredible that a man possessed of ordinary intelligence would either undertake to get into the pit, or to move the grain while the shaft was in motion. Two methods had been provided for stopping the machinery, both available from the office: First, by throwing a switch which would immediately stop the engine; and, second, by moving a lever which instantly shifted the belt from a fixed to a loose pulley, both being located on the shaft.

On the day of the accident the grain became clogged in the pit, and deceased went to the lower floor for the purpose of setting the cup belt in motion. The shaft was revolving at the speed before mentioned, and, without stopping it, he got over into the pit and stooped to clean away the grain. His clothing was immediately caught, and he was

whirled violently around the shaft, and so badly injured that he died within a few hours.

Counsel for defendant insists that if the clothing of the deceased was caught upon the shaft, and not by the setscrew, no recovery could be had, because he well knew and assumed a very obvious risk when he stepped into the pit, in close proximity to the shaft, the motion of which he made no effort to stop, and also insists that there was no testimony tending to show that the clothing was caught by the setscrew, and therefore defendant's negligence cannot be predicated upon its failure to cover the head of this screw. We need not discuss either question. As to everybody except an employee who might get into the very small space we have mentioned, this setscrew and the shaft were covered and protected, so that the statute was fully complied with as to them. With easy means provided for shutting off the motion, no one would anticipate an attempt to relieve the belt cup while the shaft was revolving. When the deceased, a man of skill, experience, and intelligence, went into the pit without stopping the machinery, and in absolute disregard of his personal safety, he was guilty of contributory negligence of the rankest kind, which forbids a recovery by the plaintiff.

Counsel makes some claim that there was testimony tending to show that this method of cleaning out the pit was customary in this and other elevators. It may have been customary, but it was culpable negligence, and custom will not excuse the performance of any act negligent in itself. Larson v. Ring, 43 Minn. 88, 44 N. W. 1078. See also Wherry v. Duluth, M. & N. Ry. Co., 64 Minn. 415, 67 N. W. 223.

Order of the court below affirmed.