J. T. BORDEAUX, ADMINISTRATOR, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 28 April, 1909.)

1. Evidence—Nonsuit—Waiver.

A motion as of nonsuit upon the evidence, made at the close of plaintiff's evidence and not renewed at the close of all the evidence, is waived and will not be considered on appeal.

2. Master and Servant—Railroads—Yards—Employees—Negligence—Rules of Employer—Enforcement.

The failure to enforce a reasonable rule made for the protection of employees of a railroad company engaged in repairing cars upon an extensive repair and switching yard is evidence of a waiver or abrogation of the rule.

3. Master and Servant—Railroads—Rules of Employer—Habitual Violation—Knowledge—Waiver.

A printed and bulletined rule made for the safety of employees engaged in repairing cars on an extensive repairing and switching yard of a railroad company, requiring that flags of warning

should be placed in a certain manner at such times, will not relieve the company of liability for its negligence, when the employees fail to observe the rule while engaged in "short jobs," when it was actually or constructively known to the company that the rule was habitually and continually disregarded in such instances to such an extent as to amount to an abrogation.

4. **Master and Servant — Railroads — "Kicking" Cars — Railroad Yards—Rules of Safety—Enforcement—Employer.**

While the rules of liability of railroads in regard to "kicking" cars or making "flying switches" at a public crossing do not apply to the constant changing or switching of cars on extensive repairing and switching yards, it is still the duty of the company to establish and enforce proper rules for the protection of the employees in such yards from injuries otherwise likely to occur to them when engaged in repairing cars therein.

5. **Master and Servant—Railroads—Rules of Employer—Waiver— Contributory Negligence—Evidence—Questions for Jury.**

When there is evidence of a waiver by a railroad company of its rule that employees at work on cars on its extensive repairing and switching yard must put out blue flags as warnings, and that plaintiff and two other employees agreed that the job would be a short one—from a half minute to two minutes—discussed the matter and decided not to put out the flags, but have one of their number keep a lookout, and while thus engaged the plaintiff's intestate was killed by a shifting engine "kicking," at fast speed, cars onto the one where he was working, the question of contributory negligence is one for the jury.

ACTION to recover damages for the alleged negligent killing of L. W. Bordeaux, tried before *Biggs, J.,* and a jury, at October Term, 1908, of WAYNE.

These issues were submitted to the jury:

1. "Was the plaintiff's intestate killed by the negligence of the defendant company?"   Answer: "Yes."

2. "Did the plaintiff's intestate, by his own negligence, contribute to his death?"   Answer: "No."

3. "What damages, if any, is plaintiff entitled to recover?" Answer: "Six thousand dollars."

Defendant appealed.

The facts are stated in the opinion of the Court.

*W. C. Munroe* and *George E. Hood* for plaintiff.
*Aycock & Daniels* and *R. W. Winston* for defendant.

150—34

BROWN, J. The evidence discloses a state of facts which, with the exception hereinafter noted, is practically uncontested.

Plaintiff's intestate was a car repairer, employed in defendant's switching and repair yards at South Rocky Mount, whose duty it was to repair cars standing on the numerous tracks therein. For the protection of its workmen the defendant had long since adopted and published .rules which required those employed in repairing cars on tracks in the yards to place a blue flag on the car, so as to give notice to the switch enginemen not to move. such cars or run other cars in on them, so as to endanger the workmen employed in repairing them.

On 13 March, 1907, the intestate, with Denby and Wilkens, fellow-workmen, went out to repair a tank car on track No. 1, carrying with them a blue flag furnished by the defendant. There was much shifting going on at the time on the yard tracks. Instead of putting out the flag, the repairers discussed the matter and decided that this was a short job and to put Denby out to watch, who failed to keep proper lookout. While Bordeaux, the plaintiff's intestate, was under the car repairing it, the engineer of a switch engine "kicked" or "pitched" a box car loaded with lumber onto track No. 1, which struck another car and forced that against the tank car, running it over intestate and killing him.

1. It is contended by defendant that his Honor erred in denying the motion to nonsuit. We are precluded from considering this exception, because, while made at the close of plaintiff's evidence, it was waived by not renewing it at the end of all the evidence. Revisal, sec. 539; *Parklier v. Railroad,* 129 N. C., 263.

2. It is contended that there is no evidence of negligence. This contention would be well founded but for the fact that there is evidence in the record sufficient to go to the jury that the rule promulgated by defendant for the protection of those engaged in working around and under cars in its yards had been allowed by the superintendent and foreman of defendant to relapse into "innocuous desuetude," especially as to "short jobs." We admit that the rulings of the court in regard to "kicking" cars, or making .flying switches at public or much frequented

crossings, do not apply to the constant changing or switching of cars that is inevitable in the extensive repair and switch yards of a large railway system. But while such methods may be necessary, it is equally necessary that the company should not only establish proper rules for the protection of employees on the yards, but also should enforce them.

A rule to protect employees should be so framed as to guard them to a reasonable extent against the consequences, not only of the carelessness of coemployees, but of their own carelessness also. It is well known that men are prone to run risks in order to save time and trouble, especially where the risks last but a moment, and the precaution necessary to guard against it requires a considerable period of time.

A rule which has been habitually violated, with the knowledge or acquiescence of the master, actual or implied, is almost universally regarded as waived or abrogated. *Wright v. Railroad,* 5 R. R. Rep., 483; *Biles v. Railroad,* 139 N. C., 538; *Haynes v. Railroad,* 143 N. C., 165; *Railroad v. Meckles,* 50 Fed., 722; *Devoe v. Railroad,* 174 N. Y., 1.

There is evidence *pro* and *con* upon the question of the waiver of the rule, which was submitted to the jury by the learned judge in a well-considered, clear and correct charge as to the law bearing thereon.

It is doubtless true, as contended, that defendant's superintendents and foremen in charge of the yards cannot tell whether a job will be a long or a short one. Therefore it follows that the only safe course to pursue is to enforce obedience to the rule in respect to all jobs done on the yards, whether long or short, by discharging those who fail to observe it.

It appears in evidence that, notwithstanding the printed and bulletined rule, it was a custom of long standing in these yards, and well known, that if the workmen found the job a short one, that could be done in from two to five minutes, they would not put up flags, and if it was a longer job they would put them up. Mozingo, the engineer who caused the catastrophe by "kicking" in the loaded box car, knew of the custom, for he states in his testimony: "I could see car repairers at work, and I knew the customary way of repairing the cars for a month previous to

the death of the plaintiff's intestate. For short jobs in repairing cars the repairers didn't put up any flags. It was the custom not to put them up. It would seem that they took the chances on short jobs. The flags were the only guides I had. If no flag up, I would run the cars right in; wouldn't know whether long or short jobs, and so had to rely on flags."

There is further evidence that the speed limit fixed by rule for the yards is six miles per hour, and that the box car was pitched onto track No. 1 at a much faster rate of speed, so that it rolled uncontrolled over a hundred yards and crashed into the intervening car with such force that it was thrown violently against the tank car which the intestate was repairing.

With the rule in abeyance, and the custom of the workmen well known to the engineer, to "kick" the car in on track No. 1 under such conditions and at such speed, is undoubtedly culpable negligence. *Hudson v. Railroad,* 142 N. C., 198; *Wilson v. Railroad,* 142 N. C., 336; *Allen v. Railroad,* 145 N. C., 214; *Ray v. Railroad,* 141 N. C., 84; *Doing v. Railroad,* 151 N. Y., 579; *Dowd v. Railroad,* 170 N. Y., 459; *Railroad v. Lowe,* 1 R. R. Rep., 363.

3. It is contended that the uncontradicted evidence shows that the plaintiff's intestate was guilty of contributory negligence, and that his Honor erred in refusing so to charge. Upon this issue he charged the jury: "Even though you should find that the rule requiring the putting out of the blue flags when the employees were engaged in such work as the plaintiff's intestate was engaged in when he was injured was habitually violated, yet if the work in which the plaintiff's intestate was engaged at the time of the injury was of so dangerous a character that an ordinarily prudent man would not have undertaken to have done the work without putting out blue flags, then in such case the plaintiff could not recover, and you should find the second issue 'Yes.' "

It appears in evidence that, upon examination, the repairers all agreed that the job would be a very short one—from half minute to two minutes—and that they discussed the matter and decided not to put out the flag, but to have one of their number keep a lookout.

---

Of course, if there was no evidence of a waiver or abrogation of the rule, such clear disobedience of it would effectually bar a recovery; but if the rule is taken to be in abeyance, then it practically did not exist, and the question must be determined accordingly. With the rule out of the way, we are not prepared to hold as matter of law, in any view of the evidence, that the intestate was guilty of such contributory negligence as will prevent a recovery.

Whether under such circumstances a man of ordinary prudence, having to go under the car for such a short space of time, would have reasonably trusted to the vigilance of his companion, instead of the more certain and reliable signal flag, is a question properly and fairly submitted to the jury.

We have examined all the exceptions in the record, and find No Error.