# NELLIE BOOS v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

November 27, 1914.·

Nos. 18,793—(48).

**Death of servant — negligence of foreman.**

1. Evidence in an action to recover damages for the death of one of defendant's yard employees killed while attempting to couple cars standing on a spur track, considered and *held* such as would support a finding that the foreman of a switching crew working on the lead track from which the spur branched was bound to anticipate deceased's presence on the spur in the performance of his duties, so that it was negligence for him to cut loose other cars and allow them to run down grade, without warnings, lights or attendants, to and upon the spur, where they collided with the cars between which deceased was working.

**Questions for jury.**

2. Whether deceased assumed the risk or was himself negligent, *held* for the jury.

**Negligent custom unavailing.**

3. Defendant could not toll its·duty to use reasonable care in keeping safe the place where deceased was required to work by invoking a negligent custom or usage with respect to the handling of its cars and the conduct of operations in the yards.

**Offer of evidence — when inadmissible.**

4. If any of the matters embraced in a joint offer of evidence are inadmissible, it is not error to reject the whole.

**Action by wife — inquiry into relation with husband.**

5. In an action by a wife, as administratrix of her husband's estate, to recover damages for his death, the state of the domestic affairs between plaintiff and deceased at or preceding the time of his death, short of desertion by her or forfeiture of her right to support, cannot be inquired into for the purpose of defeating a recovery or reducing the damages.

**Excessive damages.**

6. $7,500 damages for the death of a foreman of a switching crew, who was earning from $90 to $100 per month, *held*, under the circumstances of the case, excessive.

---

[1] Reported in 149 N. W. 660.

Action in the district court for Ramsey county by the administratrix of the estate of Martin J. Boos, deceased, to recover $7,500 for the death of her intestate while in the employ of defendant. The case was tried before Kelly, J., and a jury, 10 members of which signed a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. New trial granted unless plaintiff consents to a reduction of the verdict to $5,000.

*J. L. Erdall* and *M. D. Munn,* for appellant.

*C. D. & R. D. O'Brien* and *Wondra & Helm,* for respondent.

PHILIP E. BROWN, J.

Action by the administratrix of Martin J. Boos to recover damages caused by his death alleged to have resulted from defendant's negligence. Plaintiff had a verdict. Defendant appealed from an order denying its alternative motion.

Plaintiff's deceased was killed on January 9, 1913, in defendant's yards at Shoreham, Minneapolis. These yards were known as the east and west end. The former consisted of two lead tracks extending from the main line, with 12 other tracks radiating between and connecting them, each long enough to hold a train of about 48 cars. Trains coming into the yard were set on one of these radiating, or spur, tracks for inspection, and cars found to be in bad order were so marked. At night a switching crew worked in each yard, sorting the cars and setting them on the various spur tracks in order to make up outgoing trains. Bad order cars were placed on one of the spurs selected each night by the assistant yard master or the foreman of the switching crews, from which they were transferred to the repair tracks. At the time of the accident, and for some time prior thereto, plaintiff's deceased was employed in defendant's yards as foreman of the repair track switching crew, with sole authority to direct its movements and work. He had charge of a switch engine and his crew consisted of an engineer, a fireman and two helpers. Among other duties, he was required to take the bad order cars each night from the track on which they were collected to the repair tracks. On the night of January 9, 1913, spur track No. 4,

located south of the center of the east end yard, was designated to receive the bad order cars, and two had been placed thereon from the east lead track, the first having the draw-bar in its east end pulled out. Thereafter, at about 4:35 o'clock in the morning, deceased, with his crew, backed his engine, to which several cars were attached, on track 4 from the west lead track, leaving one of his helpers at the switch, and, with the other helper, attempted to hook the car with the defective coupler to the other car. While so engaged, and from 15 to 30 minutes after the placing of the first two cars on the spur, two more bad order cars were cut loose, by the same switching foreman who had placed the others, from a train at the upper, or northerly, end of the east lead track, and allowed to run down the grade thereof, with neither lights nor attendants, to track No. 4, where the switch, an unlighted and unguarded one, had been set for them, whence they continued down the slight grade of the latter some 10 or 15 car lengths, until they collided with the cars between which deceased and his helper were working, killing them. The place of the accident was not visible from the point where the second two cars were cut loose, and the crew releasing them, not knowing of deceased's presence on track 4, gave him no notice of the operation. His engineer neither saw nor heard the cars approaching, nor felt the impact. No work was done at night in the repair shops to which the bad order cars were to be taken, and the shift of deceased and his crew ended at 6, while that of the other switching crews ended at 7, a. m.

1. Plaintiff claims defendant was negligent in failing to use due care to make the place where deceased was required to work reasonably safe. Defendant denies negligence on its part and contends that deceased assumed the risk and was himself negligent; predicating its position upon the ground that the work was being done, on the night in question, by all of its employees, save deceased and his crew, in the usual manner and in accordance with the custom theretofore obtaining. It argues that the evidence conclusively established a custom or usage of notifying deceased of the track selected for the bad order cars, all of which were accordingly set thereon and notice then given him of such fact, when, and not before, he would

take them out, and that, if he had occasion to go upon the bad order track before receiving the last mentioned notice, it was his duty to protect himself by advising the other switching crews of his presence or by taking possession of the switches; wherefore, deceased having failed to do either and gone upon this track without having received such notice, plaintiff cannot recover.

The record contains no direct testimony tending to show any notification of deceased that any bad order cars had been placed on track 4, or that the operation of collecting them thereon had been completed so that he should go in and get them. On the contrary it affirmatively appears by the testimony of the foreman of the switching crew which released the last two cars, who, in accordance with the alleged custom or usage, would have given the notice, that none such was given. But notwithstanding this, defendant's contention must fail; for the custom or usage upon which it is founded was neither so conclusively established as to require the jury to find it nor of a character sustainable by law. Insofar as its existence depends upon the testimony of the foreman whose crew released the cars which caused this accident, no great reliance can be placed thereon, for it would have been but natural under the circumstances that he should make the best explanation possible of his conduct. Furthermore, while his testimony tends generally to support defendant's hypothesis, he admitted, while claiming the fact to be otherwise, that there was no general custom or rule requiring deceased to protect himself; and his insistence that deceased should not have gone after the cars until notified is contradicted by the testimony of defendant's assistant night yard master that it was left to deceased entirely as to when he would do so, and that such was customarily done at any time during the night, though usually after midnight. Moreover, since deceased's shift ended at 6 o'clock a. m., he would naturally, at 4:35, have been looking to the finishing of his work. The evidence, therefore, would clearly support a finding that, when the last two cars were turned loose, the foreman of the crew releasing them was bound to anticipate deceased's presence on track 4, engaged in attempting to remove the defective car, from which the conclusion of negligence on defendant's part would, under the fur-

ther facts disclosed, necessarily follow.   Likewise, under the circumstances, it was fairly for the jury to say whether deceased was required to anticipate that this foreman, who was thoroughly familiar with the general situation, would send uncontrolled cars down upon him without warning, or whether he assumed the risk.

Nor could defendant toll its duty to use reasonable care in keeping safe the place where deceased was required to work, by invoking a custom or usage of handling its cars in such an inherently dangerous manner as that disclosed by this record.   As said in Hamilton v. Chicago, B. & Q. Ry. Co. 145 Iowa, 431, 436, 124 N. W. 363, 365: "It is practically the universal rule that custom or usage will not justify a negligent act."   To the same effect see Braaflat v. Minneapolis & Northern Ele. Co. 90 Minn. 367, 369, 96 N. W. 920; Wiita v. Interstate Iron Co. 103 Minn. 303, 309, 115 N. W. 169, 16 L.R.A.(N.S.) 128; The P. P. Miller, 180 Fed. 288; Thompson, Negligence, §§ 30, 3777; White's Supp. Id. (Vol. VIII.) same sections.   And, as declared by Mr. Thompson in his Commentaries on Negligence, § 4528, note: "It would be difficult to state a proposition more careless of justice and absolutely brutal, than the proposition that a railroad company can shunt its cars along its tracks at night with no light upon them to apprise its yardmen of their approach, and with no man upon them to give warning to those who may be on the track in front of them."   See sections 4512–4543, Vol. VIII. (White's Supp.) of the same work.   See also, Bordeaux v. Atlantic, 150 N. C. 528, 64 S. E. 439.   Defendant could not have contracted for immunity from liability for negligence, and so much the more can it not be permitted to stand behind a negligent custom.   Nor would an employee readily be charged with assuming the risks involved in such a custom, and the evidence in this case falls short of establishing any such assumption as a matter of law.

2. Deceased was between 32 and 33 years old, strong and healthy, and earning from $90 to $100 per month.   He was married, but had no children.   Plaintiff, his wife, admitted she had not lived in the same house with him for about three years prior to his death, claiming that this state of affairs was brought about solely by his desire that they should live with his parents.   She testified, how-

127 M.—25.

ever, that during that period they were together a good deal, the last time being about a week prior to the accident, and that their relations as husband and wife continued up to the time of his death, though he contributed only about $10 per month towards her support. She knew of his death, but did not attend the funeral. Later during the trial, defendant, as a part of its case, offered to prove a different reason for the separation, that his mother received his wages, and that none thereof was given to plaintiff after she left him, together with other matters, all embraced in a joint offer, which was rejected. If, therefore, any of the matters were inadmissible, it was not error to reject the whole. 3 Dunnell, Minn. Dig. § 9717, note 8. Some were improper. If defendant had attempted to show desertion by plaintiff of forfeiture of her right to support, a different question would be presented, namely, whether such would defeat her right to recover or might be considered in mitigation of damages. See Stimpson v. Wood, 59 L. T. (N. S.) 218; Fort Worth v. Floyd (Tex. Civ. App.) 21 S. W. 544. But the offer as made was not broad enough to raise those questions, failing, among other things, to include discontinuance of the marital relations, and short of this it was not competent for defendant to inquire into the state of the domestic affairs of deceased and his wife. Dunbar v. Charleston & W. C. R. Co. 186 Fed. 175. See, also, Central of Georgia Ry. Co. v. Bond, 111 Ga. 13, 36 S. E. 299; Boswell v. Barnhart, 96 Ga. 521, 23 S. E. 414.

3. Were the damages excessive? These must be confined to the pecuniary loss sustained by plaintiff. Hutchins v. St. Paul, M. & M. Ry. Co. 44 Minn. 5, 46 N. W. 79. And their amount is arrived at by considering the circumstances of each case. The jury awarded $7,500, the highest statutory allowance. Defendant, in this connection, and others, contends that counsel for plaintiff was guilty of misconduct in summing up to the jury. His remarks go beyond legitimate argument and are disapproved. But a majority of the court hold that they do not warrant a reversal. They have, however, been considered in connection with the verdict. We are unable to say that plaintiff was entitled to the highest sum allowable under any circumstances in an action for death.

It is therefore ordered that if plaintiff, within 10 days after the remittitur goes down, files consent to a reduction of the verdict to the sum of $5,000, the order appealed from will stand affirmed; otherwise a new trial is granted.

HALLAM, J. (dissenting).

Deceased was 32 years old, earning $90 to $100 a month. Plaintiff his widow is 30. If, as the opinion indicates, it is "not competent for defendant to inquire into the state of the domestic affairs of deceased and his wife" short of showing "discontinuance of marital relations" it seems to me there is no ground for a reduction of this verdict.

If such matters are proper to be considered at all, then defendant's proffered evidence should have been received and its rejection was error and a new trial should be granted to defendant without condition.

Neither does it seem to me that objectionable remarks of counsel furnish any ground for reduction of the verdict of a jury.

I can see no justification for a conditional affirmance of the order of the trial court.