### B. F. WOOLEY v. O. C. BRUTON.

(Filed 29 November, 1922.)

**1. Trials—Motions—Nonsuit—Evidence—Statutes—Waiver.**

The introduction of evidence by the defendant upon the overruling of his motion at the conclusion of the plaintiff's evidence, and his failure to renew his motion on all the evidence, is a waiver of his right under the statute, C. S., 567.

**2. Statutes — Marriage — Penalties — License—Justices of the Peace—Ministers of the Gospel—Contracts.**

C. S., 2498, requiring that a minister or officer shall not perform the marriage ceremony "until there is delivered to him a license for the marriage," is in pursuance of a public policy and requires an actual and not a constructive delivery of the license to the officer or minister before he shall perform the ceremony, and a mailing of the license before the performance of the ceremony, though the officiating officer had been assured thereof by telephone from the register of deeds, is not such delivery as will protect the justice of the peace from the penalty imposed by C. S., 2499.

STACY, J., dissenting.

**3. Limitation of Actions—Marriage—License.**

A summons was issued to recover the penalty against a justice of the peace, C. S., 2499, for performing the marriage ceremony without the delivery of the license therefor to him, C. S., 2498, within less than a year from the time he had performed it: *Held,* the plea of the statute of limitations, C. S., 443 (2), could not be sustained.

**4. Appeal and Error—Objections and Exceptions—Briefs—Rule of Court.**

An exception not set out in appellant's brief on appeal will be considered as abandoned. Rule 34, 174 N. C., 837.

APPEAL by defendant from *Ray, J.,* at the April Term, 1922, of MONTGOMERY.

This action was begun before a justice of the peace against the defendant, a justice of the peace, for the recovery of the penalty of $200 for performing a marriage ceremony "without first having a marriage license therefor delivered him as required by law." Judgment having been rendered against the plaintiff, he appealed to the Superior Court,

where the action was tried *de novo.* The evidence showed that the defendant performed the marriage ceremony in question at Mount Gilead, in the county of Montgomery, on Saturday night, 22 January, 1916, and the defendant testified that he received the marriage license in the mail from Troy on Sunday, the day after the ceremony was performed. This action was begun on 19 January, 1917. Verdict and judgment for plaintiff. Appeal by defendant.

*Bob V. Howell and Dockery & Wildes for plaintiff.*
*R. T. Poole for defendant.*

CLARK, C. J. There were two issues submitted to the jury: (1) "Did the defendant unlawfully and without a license being first delivered to him, as required by law, perform a marriage ceremony between Dock Wooley and Lucy Barringer?" (2) "Is the plaintiff's right of action barred by the one-year statute of limitations governing the right to sue for penalty in such case?" The jury responded to the first issue "Yes," and to the last issue "No."

The motion for nonsuit made at the close of plaintiff's evidence was refused, but the motion was not renewed at the close of all the evidence. The motion for nonsuit at the conclusion of the plaintiff's evidence was waived by the introduction of evidence by the defendant and the failure to renew motion on all the evidence. C. S., 567. *Bordeaux v. R. R.,* 150 N. C., 530; *Smith v. Pritchard,* 173 N. C., 722.

It appearing that the summons was issued on 17 January, 1917, and that the illegal act complained of was committed on 22 January, 1916, we see no pertinency in the plea of the statute of limitations, C. S., 443 (2); and, indeed, the exception in that regard was abandoned, because not set out in the appellant's brief. Rule 34 of this Court, 174 N. C., 837.

The only exception left to be considered is the instruction of the court to the jury that if they believed all the evidence in the case to answer the first issue "Yes."

C. S., 2499, provides: "Every minister or officer who marries any couple without license being first delivered to him as required by law . . . shall forfeit and pay $200 to any person who sues therefor."

The defendant testified in his own behalf that one Harris came into his store late Saturday afternoon on 22 January, 1916, bringing Dock Wooley, whom he had arrested in Richmond County on a criminal charge; that said Dock Wooley wished to settle the matter, and he suggested that the best way was for Dock to marry the girl. Thereupon, he called up over the telephone O. P. Deaton, the register of deeds at Troy, the county-seat, related the circumstances, and Deaton told him

that he would issue the license, put it in the postoffice, and phone him, and that after the license had been issued and put into the mail he could go ahead and perform the marriage ceremony. Later that afternoon the register of deeds phoned him that the license had been issued and stamped, and was already in the postoffice, perfectly all right, and to go ahead and marry the parties; that this was about 8 or 9 o'clock; that he then performed the marriage ceremony. He did not receive the license until the next morning, which was Sunday.

C. S., 2498, emphasizes the requirement that the license must be first delivered to the officer before the solemnization of the marriage: "No minister or officer shall perform a ceremony of marriage between any two persons, or shall declare them to be man and wife, *until* there is delivered to him a license for the marriage of the said persons, signed by the register of deeds of the county in which the marriage is intended to take place, or by his lawful deputy." It is true that the marriage is not invalid because solemnized without a marriage license; *Maggett v. Roberts,* 112 N. C., 71; *S. v. Parker,* 106 N. C., 711; *S. v. Robbins,* 28 N. C., 23—or under an illegal license; *Maggett v. Roberts, supra*—but it is clear that both these sections of the statute require that the license shall be first delivered to the officer before the marriage is solemnized, else under the latter statute he is liable to the penalty sued for in this action.

The defendant relies upon the well settled principle of law that delivery of goods by a vendor to a common carrier is delivery to the vendee. *Hunter v. Randolph,* 128 N. C., 92, and cases there cited. But that case rests upon the ground that the carrier is the agent of the vendee, to whom the possession passes from the vendor upon the delivery of the goods to the carrier. He also relies upon *Lynch v. Johnson,* 171 N. C., 611, and cases there cited, which hold that where the holder of a legal title executes a good and sufficient deed to another for the latter's interest in land and deposits the deed in the postoffice in an envelope properly addressed, by mailing the deed the grantor parts with his authority and control over it, and this passes the title in the property to his grantee. But these cases have no bearing upon the words of the statute, C. S., 2498, which forbids any minister or officer to perform the ceremony of marriage "until there is delivered to him a license," for such marriage; and C. S., 2499, which imposes this penalty of $200 if the minister or officer shall marry a couple "without license being first delivered to him as required by law."

These are matters of public policy, and the sections above referred to clearly require an actual and not a constructive delivery of the license before the officer shall perform the ceremony. It is needless for us to

speculate upon the motive of the Legislature in making this explicit requirement of the actual delivery of the license. It is sufficient to say "the law is so written."

It should not pass without some notice that this action, which was instituted in January, 1917, has just reached this Court for decision—a period of nearly 6 years, which argues, together with so many other cases coming up before us similarly delayed, that there is a congestion in the administration of justice which should be remedied.

No error.

STACY, J., dissenting: The only point presented on this appeal is whether the defendant, a justice of the peace, performed the marriage ceremony in question "without a license being first delivered to him, as required by law." C. S., 2499. It is said in the opinion of the Court that this means "an actual and not a constructive delivery of the license before the officer shall perform the ceremony"; and hence it necessarily excludes the delivery to another for the officer. I do not think the statute, as enacted by the Legislature, is quite so exacting. In the case at bar the defendant, by request, called up the local register of deeds over the telephone, acquainted him with the circumstances, and obtained from him a promise to issue the marriage certificate and to mail it direct to the defendant. This was in January, 1916, before the passage of Public Laws 1921, ch. 129, requiring health certificates, etc. Later, in a telephone conversation with the register of deeds, the justice of the peace was informed, and correctly so, that the license had been issued and properly mailed, and that it was "perfectly all right to go ahead and marry them." Thereupon, the defendant performed the marriage ceremony.

Both of the officers, with full knowledge of the facts, understood and considered this to be a sufficient delivery of the license, "as required by law." It was the method mutually adopted for its delivery by the one and its receipt by the other. Unquestionably, what took place amounted to an issuance of the license. It was said in *Coley v. Lewis,* 91 N. C., 21, that a marriage license was issued "when the instrument, complete in form, passes out of the register's hands by his own act into the hands of another; and this, unaffected by directions as to terms for its subsequent use." To like effect is the holding in *Maggett v. Roberts,* 112 N. C., 71. And it is a universal principle of law that a delivery by specific authorization to a designated agent or agency is a delivery to the principal. 18 C. J., 477; 1 Words and Phrases, 1279. The statute provides for such delivery as is "required by law," and no more. The register of deeds, under the facts here disclosed, would not be permitted to say that he did not issue the license; and the justice of the peace

would not be heard to deny that he received it, or that it was delivered to him, prior to the marriage. "Delivery does not necessarily import an actual physical tradition of possession from one hand to another." *Ins. Co. v. Hall,* 210 Mass., 332.

It will be observed that neither the issuance of the certificate nor its delivery to the officiating officer is a prerequisite to the validity of the marriage. *Maggett v. Roberts, supra.* It is the status of the contracting parties that the State or society is primarily interested in, and not so much the manner and form of the "delivery" and return of the license. Can it be said that an officer who performs a marriage ceremony without first actually and physically having in his hands the marriage certificate, when, at his request, it has been duly delivered to and received by another for him, would be subject to the statutory penalty, and, therefore, guilty of a crime? I think not.