CLAYTON BANKING COMPANY v. GEO. C. GREEN, TRUSTEE, JOE E. TALTON, MRS. LENA TALTON, W. B. JOHNSON AND ETHEL TALTON BRANNON.

(Filed 9 October, 1929.)

**Mortgages H o—Where under agreement with clerk the deposit for an upset bid is mailed, the deposit is made as of time of mailing.**

While the clerk of the Superior Court is without authority to order a resale of lands foreclosed under mortgage without an increase bid filed with him under the provisions of C. S., 2591, and the payment of the

deposit required, the provisions of the statute relating thereto are to be liberally construed to effectuate its intent to protect the mortgagor, and when within the statutory time limit the offerer has communicated with the clerk of the court by phone and offered to come from an adjacent town and make a sufficient deposit, and is informed by the clerk that it would be sufficient to send a cashier's check by mail on that day, and a good cashier's check is accordingly mailed, a substantial compliance with the statute has been made, though the check was received by the clerk after the expiration of the time limit of the statute.

CIVIL ACTION, before *Midyette, J.,* at June Term, 1929, of JOHNSTON.

The trial judge found the facts and such findings may be summarized as follows:

On 6 October, 1921, Joseph S. Talton executed and delivered to the defendant, George C. Green, trustee, a deed of trust to secure a note or notes payable to the Metropolitan Life Insurance Company, which deed of trust was duly recorded. Thereafter said notes were duly transferred to Dr. W. B. Johnson, who is now the owner and holder of same. Joseph S. Talton died and his son, Joe E. Talton, and wife, Mrs. Lena Talton, defendants, executed and delivered to the plaintiff bank a mortgage on the undivided interest of said Joe E. Talton in the lands of his father, Joseph S. Talton, deceased, to secure a note of $2,000 payable to said plaintiff. Default was made in the payment of the note made by Joseph S. Talton, deceased, secured by the deed of trust to the defendant Green, and thereupon the holder of said note made demand upon Green, trustee in said deed of trust, to advertise the property described therein. Advertisement was duly made under said deed of trust and the land offered for sale on 25 April, 1929, at which sale the defendants, Joe E. Talton and Mrs. Ethel T. Brannon, heirs at law of Joseph S. Talton, became the last and highest bidders for said lands at the sum of $6,600. A report of the sale was duly made by the trustee within a day or two after the sale. The defendant, Joe E. Talton, told the cashier of plaintiff bank that he was making arrangements to pay off the indebtedness of $2,000 held by said bank. Whereupon said cashier informed Joe E. Talton that if such arrangement were made the bank would not raise the bid on the land, but that said bank would raise the bid unless the matter was adjusted. Within a period of ten days the cashier of plaintiff bank communicated with the clerk of the Superior Court of Johnston County and informed the clerk that said bank desired to place an increased bid on the purchase price of said property if Talton did not make payment. The clerk of the Superior Court further informed the cashier of plaintiff bank that the tenth day after the sale would be 5 May, 1929, but that in view of the fact that such date was on Sunday, that Monday, 6 May, 1929, would be the final date for raising the bid. In the early afternoon

of 6 May, 1929, the cashier of plaintiff bank called the clerk of the Superior Court at Smithfield and inquired "if said bid had been raised or if the said Joe E. Talton had deposited with the clerk an amount sufficient to cover the indebtedness of the Clayton Banking Company, . . . and the clerk of the Superior Court informed the said cashier that neither had been done; that thereupon the said cashier informed the clerk of the Superior Court that the Clayton Banking Company desired to raise the bid for said lands, and that he, the said cashier, would come over to Smithfield immediately and bring a cashier's check for $330, representing five per cent of the previous bid; that the clerk of the Superior Court thereupon informed said cashier that it was not necessary for him to come over to Smithfield, a distance of twelve miles, for that purpose, but that it would be sufficient if he, the said cashier, would on that date, 6 May, 1929, place a cashier's check for $330 in a stamped envelope and mail the same to the clerk of the Superior Court, and that if such was done that he would consider it as a deposit made as of that date, and that upon such deposit an order of resale would be entered for said lands; that upon such information, the cashier of the Clayton Banking Company, about 3:30 p.m., 6 May, 1929, mailed or placed a duly executed cashier's check in an envelope, in the postoffice at Clayton, N. C., stamped and addressed to H. V. Rose, clerk of the Superior Court of Johnston County, Smithfield, which envelope containing said check was mailed as aforesaid, at the postoffice in the town of Clayton, N. C.; that later in the same afternoon, 6 May, 1929, F. H. Brooks, attorney for said bank, at the request of said bank, went to the office of the clerk of the Superior Court and again informed said clerk on the part of the Clayton Banking Company, that the said Clayton Banking Company desired a raise of bid, and offered to give the said clerk his personal check for the amount of said raise; that the said clerk informed the said F. H. Brooks that he had already discussed the matter with the said cashier over the telephone and notified him that it would be sufficient if the cashier would mail him a check, and that the cashier had done so, and that he would consider that a raise of bid, and that an order of resale would be made, and that it was not necessary for the said F. H. Brooks to put up his personal check on behalf of the bank. On the morning of 7 May, 1929, the said cashier's check in the amount of $330 was duly delivered to the clerk of the court by letter, in an envelope bearing clearly the Clayton post mark, under date of 6 May, 1929; that said check was in due form and was collectible, and the clerk of the court accepted the same as a raise of bid on said land, pursuant to his understanding with the cashier of the Clayton Banking Company; that on the morning of 9 May, 1929, the deputy clerk of the Superior Court of

Johnston County, under instructions from the clerk, wrote on said sale book an order for resale as of 6 May, 1929, but said order of resale was not actually signed by the clerk of the court until 16 May, 1929; that theretofore Joe E. Talton, one of the bidders at the original sale, informed the trustee that he had assigned his bid to his wife, Lena Talton, and the said Lena Talton, as assignee, with Ethel T. Brannon, the other bidder at said sale, made demand upon the trustee for a deed. . . . That the trustee, being of the opinion that there was no valid increase of bid, undertook in pursuance of the demand of said bidders and assignee to deliver a deed as trustee to the said bidders, but before delivery of such deed, said trustee was . . . restrained from delivering said deed to the said purchasers."

Upon the foregoing facts the trial judge was of the opinion and so adjudged "that the deposit of said cashier's check, mailed at Clayton, N. C., on 6 May, 1929, in an amount representing five per cent of said bid, and under the circumstances as existed and as found by the court, constituted a valid and sufficient raise of bid for said lands, under the provisions of the statute, and that the clerk of the Superior Court was acting within his authority in so accepting such payment, and that an order of resale was and is a valid and proper order," etc.

From the foregoing judgment the defendants appealed.

*E. J. Wellons, F. H. Brooks and Biggs & Broughton for plaintiff.*
*W. P. Aycock, W. H. Lyon and N. Y. Gulley for defendants.*

BROGDEN, J. Was there a valid increase of bid under the circumstances set forth in the facts found by the trial judge?

The correct answer to the question of law presented involves a construction of C. S., 2591. This section has been construed in many decisions of this Court, notably *Wise v. Short,* 181 N. C., 320, 107 S. E., 134; *In re Sermon's Land,* 182 N. C., 122, 108 S. E., 497; *Pringle v. Loan Association,* 182 N. C., 316, 108 S. E., 914; *In re Ware,* 187 N. C., 693, 122 S. E., 660; *Trust Co. v. Powell,* 189 N. C., 372, 122 S. E., 660; *Briggs v. Developers,* 191 N. C., 784, 133 S. E., 3; *Newby v. Gallop,* 193 N. C., 244, 136 S. E., 610; *Cherry v. Gilliam,* 195 N. C., 233, 141 S. E., 594.

However, it does not appear that the exact point raised in the case at bar has been determined. It is clear from the decided cases that the statute confers no power on the clerk to make orders in the cause with respect to a resale unless the bid is increased. It is also clear that an order of sale or of resale made *nunc pro tunc* is valid. *Lawrence v. Beck,* 185 N. C., 196, 116 S. E., 424.

The statute requires that the money representing an increased bid is to be "paid to the clerk of the Superior Court." Does this language mean that the money must be actually placed in the hands of the clerk by the person desiring to raise the bid, or is it sufficient to pay the money within a period of ten days to a duly authorized agent of the clerk?

It is familiar learning that the delivery of a deed is ordinarily necessary to pass title to land. In *Lynch v. Johnson,* 171 N. C., 611, 89 S. E., 61, this Court held that, if a deed properly executed, was placed in an envelope, properly stamped and addressed and deposited in the mail, that thereupon title to the property described in the deed vested in the purchaser named in the instrument. The theory upon which this principle rests is that the grantor had parted with possession and control of the paper-writing by placing it in due course of delivery to the grantee. In *Pringle v. Loan Association, supra,* it was stated by the Court that "in all such cases if the prescribed amount of the raise in bid is guaranteed, or paid, to the clerk he shall require the mortgagee or trustee to advertise and resell on 15 days notice." A strict construction of this language would indicate that if the increased bid is guaranteed, the requirements of the statute would be met. However, it is not necessary to place this decision upon that ground. In *Briggs v. Developers, supra,* an increased bid of two per cent was deposited with the clerk. This deposit, of course, was not in strict compliance with the statute, but the increased bid was held to be valid. This case is direct authority for the position that substantial compliance with the statute with respect to the payment of the increased bid is fully recognized. The reason is that as the statute was enacted for the protection of mortgagors it must be construed liberally when reasonably necessary to effectuate that purpose.

The facts disclose that the clerk of the Superior Court of his own motion selected the United States mail as the agency for transmitting the money to the court. If the clerk of the Superior Court had sent his deputy from Smithfield to Clayton to receive the money and the deputy had actually received the money, but did not report to the clerk until next morning, it could not be successfully contended that the money had not been paid. Furthermore, it appears that the attorney for the plaintiff went in person to the clerk's office on the afternoon of 6 May, and offered to pay the money, but was informed by the clerk that the bid had already been raised and that an order of resale would be made in due course. Under these circumstances we are of the opinion and so hold, that the increased bid of plaintiff was duly filed and that the order of resale was valid.

The defendants rely upon *Wooley v. Bruton,* 184 N. C., 438, 114 S. E., 628. An examination of that case, however, discloses that the

opinion was based upon the particular wording of the statute to the effect that the license must be "delivered to him as required by law," etc. The word "delivered" was construed to mean manual delivery. We cannot hold that the *Bruton case* is determinative of the legal principle involved in the case at bar.

Affirmed.