BENEFICIAL MORTGAGE CO. OF NORTH CAROLINA, INC., Plaintiff v. THE BARRINGTON AND JONES LAW FIRM, P.A., F/K/A THE BARRINGTON JONES AND PIKUL LAW FIRM, P.A., CARL A. BARRINGTON, JR., AND BENNER JONES, III, DOUGLAS M. HORNE, COUNTY OF CUMBERLAND, a POLITICAL SUBDIVISION OF THE STATE OF NORTH CAROLINA, WHITE MOUNTAINS SERVICES CORPORATION, F/K/A SOURCE ONE MORTGAGE SERVICES CORPORATION, FREDDIE McLEAN, KANICE DEE McLEAN AND FIRST-CITIZENS BANK & TRUST COMPANY, DEFENDANTS

No. COA03-512

(Filed 4 May 2004)

**Mortgages and Deeds of Trust— action to quiet title—tax fore-closure sale—judicial estoppel**

The trial court did not err by granting summary judgment in favor of plaintiff in an action to quiet title and set aside a tax fore-closure sale where the debtors defaulted on their deed of trust, a

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

foreclosure sale was held, the debtors filed Chapter 13 bankruptcy relief prior to the expiration of the 10-day upset bid period triggering an automatic stay of the foreclosure sale, and the bankruptcy judge denied the foreclosure trustee's motion to annul the stay conditioned on the fact that debtors must sell by 15 January 1996 or else the movant would be deemed the owner of the real property, because: (1) the recordation of a deed in the county registry on 23 June 1995 by the last and highest bidder at the foreclosure sale was in violation of the stay while the debtors were in the midst of a bankruptcy proceeding and the state law 10-day upset period had not run; (2) although defendants contend the 15 January 1996 deadline from the bankruptcy judge's order came and went, it did not give retroactive legal validity to the 23 June 1995 recorded deed when no parties' rights were ever fixed as to the subject real property and nothing could be legally recorded; (3) upon lifting the stay as of 15 January 1996, the foreclosing trustee was to pursue foreclosure by again advertising and selling the property in accordance with the provisions of N.C.G.S. §§ 45-21.16A, 45-21.17, and 45-21.17A, and the foreclosure trustee did not take the necessary steps to finalize foreclosure proceedings in light of the stay being lifted; (4) the burden falls on the party conducting a title search to check a county's special proceeding file when determining the validity of a trustee's deed issued pursuant to a power of sale foreclosure; and (5) plaintiff's claim is not judicially estopped when there was no evidence of plaintiff intentionally misleading the court even though this action was initially brought as a malpractice suit against plaintiff's attorney, the record reflected negligence by both parties as to their title searches, and a party may state as many separate claims or defenses as he has regardless of consistency.

Appeal by defendants Freddie McLean, Kanice Dee McLean and First-Citizens Bank & Trust Co., from summary judgment entered by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 28 January 2004.

*Roberson, Haworth & Reese, P.L.L.C., by Robert A. Brinson, Alan B. Powell and Christopher C. Finan, for plaintiff appellee.*

*The Yarborough Law Firm, by Garrison Neil Yarborough, for Freddie McLean, Kanice Dee McLean and First-Citizen Bank & Trust Company defendant appellants.*

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

McCULLOUGH, Judge.

Before this Court is an appeal from summary judgment granted in favor of Beneficial Mortgage Co. of North Carolina, Inc. ("Beneficial"), on an action to quiet title and set aside a tax foreclosure sale. Issues on appeal relate only to the remaining named defendants Freddie and Kanice Dee McLean and First-Citizens Bank and Trust Company (collectively "defendants").

Mr. Douglas L. Horne and Mrs. Captola E. Horne ("the Hornes") acquired by deed real property in Cumberland County, North Carolina ("the Subject Real Property"), duly recorded on 14 July 1978 in the Cumberland County Registry. On or about 23 August 1990, the Hornes executed and delivered to First Union Mortgage Corporation a deed of trust encumbering the Subject Real Property in the principal amount of $57,050. The deed, also recorded in the Cumberland County Registry, was then assigned and duly recorded to Source One Mortgage Services Corporation ("Source One").

Upon default by the Hornes as to the above-mentioned deed of trust, a substitute trustee ("foreclosure trustee") commenced a foreclosure action in Cumberland County on 20 March 1995. On 15 May 1995, a Report of Foreclosure Sale was filed in the above foreclosure action indicating that the Subject Real Property was exposed to public sale. Source One, being the last and highest bidder at $60,115, purchased the property at the public sale. The sale was conducted in accordance with North Carolina law. On 25 May 1995, prior to the expiration of the 10-day upset bid period, the Hornes filed for Chapter 13 bankruptcy relief under Title 11, triggering, pursuant to 11 U.S.C. § 362 (2003), an automatic stay of the foreclosure sale. On 19 June 1995, while the Chapter 13 proceeding was still pending, a Trustee's Deed purporting to convey the Subject Real Property to Source One was executed by the foreclosure trustee of the Source One deed of trust and then recorded on 23 June 1995.

A recall of a Writ of Possession referencing the filing of a bankruptcy proceeding was entered into the Cumberland County Special Proceeding file on 13 July 1995. On 2 August 1995, after learning of the Hornes' Chapter 13 filing, the foreclosure trustee filed a motion in the Bankruptcy Court of the Eastern District of North Carolina to annul the automatic stay triggered by 11 U.S.C. 362 so that the foreclosure. sale could be completed. In response to this motion, the Honorable A. Thomas Small, United States Bankruptcy Judge for the Eastern District of North Carolina, while denying an immediate

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

annulment, ordered that: "Should Debtors [Hornes] fail to sell the Real Property and distribute the proceeds on or before January 15, 1996, the automatic stay shall be annulled and Movant will be deemed the owner of the Real Property and entitled *to pursue* any and all non-bankruptcy remedies to obtaining possession of the Real Property." (Emphasis added.)

At this point, it is easiest to distinguish the competing interests of the Subject Real Property by individually following the two alleged chains of title.

### I. *Beneficial's Chain of Title*

Beneficial alleges, and the trial court agreed, the following represent their legal chain of title: On 18 March 1996, over two months after the 15 January 1996 deadline for annulling the stay as ordered by Judge Small, Doug Horne ("Douglas"), the son of Mr. and Mrs. Horne, entered into a line of credit with Beneficial for the principle amount of $50,000. A general warranty deed recorded on 25 March 1996 conveyed the Subject Real Property from the Hornes to Douglas. In exchange for and in security of this line of credit, a deed of trust was granted in favor of Beneficial for the Subject Real Property, with the deed of trust also being recorded on 25 March 1996. The deed of trust was drawn by David Pikul of the then existing law firm Barrington, Jones, and Pikul Law Firm, P.A ("Barrington Law Firm"). On 16 May 1996, a Certificate of Satisfaction issued in Cumberland County, showed the Hornes had satisfied their debt with Source One. The Barrington Law Firm later drew a second deed of trust in favor of Beneficial for an increased principal amount of $73,600. This second line of credit was drawn in part to pay off the first line of credit and deed of trust. This second deed of trust was duly recorded on 11 April 1997.

Pursuant to this alleged chain of title, Beneficial was granted summary judgment by Judge Weeks' finding, as a matter of law, that Douglas remains the record owner of the Subject Real Property and that his property is subject to the lien of the second deed of trust benefiting Beneficial.

### II. *Defendants' Chain of Title*

The remaining defendants in this appeal argue that the following represents their chain of title: Judge Small's ordered deadline that the Hornes sell their property by 15 January 1996 or else the automatic stay would be annulled pursuant to 11 U.S.C. § 362(d), was not met by

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

the Hornes. By violating Judge Small's order, the foreclosure sale, commenced by the foreclosure trustee without the knowledge that the Hornes had filed for Chapter 13 bankruptcy, was revived; and as of 15 January 1996, Source One was the fee simple owner of the Subject Real Property without any re-advertising or resale.

On 28 September 1999, the County of Cumberland filed a complaint for property tax foreclosure on the Subject Real Property, naming as the only defendant Source One. Cumberland County's title search stopped at the original trustee's deed to Source One. Source One did not respond to the complaint and the Clerk of the Superior Court of Cumberland County made an entry of default on 31 March 2000. The Subject Real Property was sold at a public auction on 31 August 2000, to the last highest bidder, Freddie McLean. A commissioner's deed, conveying this interest in the property to Mr. McLean, as grantee, was recorded on 20 September 2000, in the Cumberland County Registry. First-Citizen holds a deed of trust dated 5 December 2000, recorded 7 December 2000, in the Cumberland County Registry securing a loan of $70,000 to Mr. McLean.

Pursuant to this second alleged chain of title, remaining defendants now appeal the summary judgment order in favor of plaintiff. The gravamen of defendant's argument is based on their reading of the effect of Judge Small's order pursuant to 11 U.S.C. § 362, annulling the stay over the foreclosing trustee's ability to foreclose when the Hornes did not meet the deadline in his order.

On appeal, defendants contend the following: it was error for the trial court not to grant their motion for judgment on the pleadings; the trial court erred by denying the three remaining defendants'—the McLeans and First-Citizens—motion for summary judgment; and the trial court erred in granting summary judgment in favor of Beneficial.

The key issue in this case concerns the relationship between North Carolina foreclosure law and federal bankruptcy law as implicated by the undisputed facts. In the first section of our opinion we examine the requirements of North Carolina law on the lifting of the stay. The second portion of the opinion examines the validity of Beneficial's alleged chain of title. Lastly, we consider defendants' argument that this action, seeking both to quiet title and relief from a tax foreclosure sale, is barred by judicial estoppel. Pursuant to our analysis of these issues, we find the trial court correctly ordered summary judgment in favor of Beneficial.

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

## North Carolina Power of Sale Foreclosure as Affected by the Federal Bankruptcy Code

*I. Fixed Rights from a Foreclosure*

After a foreclosure sale conducted under a power of sale clause has been completed and reported to the clerk of the superior court, North Carolina law allows the equivalent of an equity court's power to decree a resale upon the filing of a substantially raised bid. From the date the sale is reported to the superior court clerk, a 10-day upset bid period is triggered allowing a bid meeting statutory requirements to upset the last highest bid and sale. N.C. Gen. Stat. § 45-21.21 (2003). Therefore, it has long been held in·North Carolina that under the state's foreclosure statutes, the final and highest bidder at a foreclosure sale is merely a proposed purchaser who has no rights, or entirely voidable rights, to the property until the upset bid period terminates. *Cherry v. Gilliam*, 195 N.C. 233, 234, 141 S.E. 594, 594 (1928). Our Supreme Court has also held that a foreclosure sale "cannot be consummated" to fix rights until the expiration of the upset bid period. *Building & Loan Assn. v. Black*, 215 N.C. 400, 402, 2 S.E.2d 6, 6 (1939). Accordingly, Judge Small of the Eastern District of North Carolina U.S. Bankruptcy Court has determined that, for bankruptcy purposes, "in North Carolina, a property has not been 'sold at foreclosure sale' under 11 U.S.C. § 1322(c)(1) until all of the state procedural requirements for completion of the sale, including the expiration of the upset bid period, have been met." *In re Barham*, 193 B.R. 229, 232 (Bankr. E.D.N.C. 1996).

The automatic stay provision of 11 U.S.C. § 362 of the Bankruptcy Code has the effect of preventing the expiration of the 10-day upset bid period when the debtor files for bankruptcy within that period. *In re Di Cello*, 80 B.R. 769, 773 (Bankr. E.D.N.C. 1987), *questioned on other grounds*, *Barham*, 193 B.R. 229. Thus, the automatic stay prevents the fixing of any rights as to any Subject Real Property protected by a stay as the upset bid period has not run.

*II. "Lifting" the Automatic Stay*

The automatic stay of 11 U.S.C. § 362(d) (2003) states: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by *terminating, annulling, modifying, or conditioning* such stay. *Id.* (emphasis added). This subsection of the statute allows relief from the stay on grounds set out in the same subsection.

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

In 1993, North Carolina law governing the sale of real property held under a power of sale, specifically N.C. Gen. Stat. § 45-21.22 (2003), was amended to include the following provision:

> When, after the entry of any authorization or order by the clerk of superior court pursuant to G.S. § 45-21.16 and before the expiration of the 10-day upset bid period, the foreclosure is stayed by the debtor filing a bankruptcy petition and thereafter the stay is *lifted,* the trustee or mortgagee shall not be required to comply with the provisions of G.S. 45-21.16, but *shall* advertise and hold the sale in accordance with the provisions of G.S. 45-21.16A, 45-21.17, and 45-21.17A.

N.C. Gen. Stat. § 45-21.22(c) (emphasis added). Judge Small explained this amendment as having the following effect:

> [I]f a bankruptcy petition is filed (1) after the notice and hearing provided for in § 45-21.16 has been completed and (2) after the Clerk of Superior Court has authorized the foreclosure and (3) prior to the expiration of the upset bid period, then if the automatic stay of 11 U.S.C. § 362 is subsequently *lifted* with respect to the foreclosure, the foreclosing trustee need not comply with the notice and hearing procedure again, but may proceed to readvertise the property and sell it. N.C. Gen. Stat. § 45-21.22(c) (Supp. 1995).

*Barham,* 193 B.R. at 232 (emphasis added). At issue in this case is determining the statute's meaning as to the term "lifted."

The "terminating . . . conditioning" language of 11 U.S.C. § 362(d) was in place when the 1993 addition to N.C. Gen. Stat. § 45-21.22 was made. As the amended statute refers directly to the protection of an automatic stay upon filing for bankruptcy, we read the term "lifted" in the North Carolina statute to incorporate "terminating, annulling, modifying, or conditioning," words all used to reference creditors' relief from the automatic stay. *Verba relata inesse videntur* (words to which reference is made are considered incorporated). *Black's Law Dictionary* 1699 (7th ed. 1999).

Our reading is consistent with that of Judge Small's and the Bankruptcy Court of the Eastern District of North Carolina, which though not controlling, assists us in making our interpretation. In an order entered 7 March 2003, Judge Smalls stated:

> Although § 45-21.22(c) uses the term "lifted" in its text with respect to the automatic stay provision 11 U.S.C. § 362, "lifted" is

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

not defined in the Bankruptcy Code and is a slang term *loosely* used by bankruptcy practitioners and bankruptcy courts to mean that *the stay no longer is applicable.* Usually this occurs when the court enters an order stating that the stay is terminated. The stay is also terminated or "lifted" when a case is dismissed. 11 U.S.C. § 362(c)(2)(B). North Carolina General Statute § 45-21.22(c) should be strictly construed in favor of preserving redemption rights. A foreclosing trustee must comply with the procedural requirements of readvertising and reselling the property set forth in North Carolina General Statute § 45-21.22(c) when a stay is "lifted" whether by order of the court or dismissal of the underlying bankruptcy case.

*In Re Price,* 03-00374-5-ATS, pg. 5, (Bankr. E.D.N.C. 2003) (emphasis added). While in this case Judge Small is incorporating "terminated" into the North Carolina statute's "lifted," he states that "terminating" is "usually" how a stay is lifted, implying that there are other means to lift a stay. An annulment is another means by which "a stay is no longer applicable," just one that is used in exceptional circumstances. *See Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir. 1989), *reh'g denied by en banc,* 888 F.2d 1388 (5th Cir. 1989) (in response to a Motion to *Lift* Stay, the court *annulled* the stay as to a complaint filed in violation of the stay, deeming it voidable, not void). We hold "annul" fits within the umbrella term of "lifted," referring in general to relief from a stay, as intended by N.C. Gen. Stat. § 45-21.22.

We do not believe our broader reading of "lifted" moots or makes superfluous the express language of 11 U.S.C. § 362(d), specifically as to the effect of an "annulment" of a bankruptcy stay. Defendant cites cases from the Third, Fifth, Sixth, Ninth, and Eleventh Federal Circuit Court of Appeals which have all agreed that an order annulling a stay under § 362(d) grants retroactive relief from the stay, validating actions taken after the stay was in place that would otherwise be void as in violation of the stay. *See In Re Siciliano,* 13 F.3d 748, 751 (3d Cir. 1994) (a foreclosure sale); *Sikes,* 881 F.2d at 178-79 (filing a personal injury claim); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 909-11 (6th Cir. 1993) (filing a products liability suit); *In Re Schwartz,* 954 F.2d 569, 572-73 (9th Cir. 1992) (a tax assessment was not in violation of a stay if the stay is deemed annulled); and *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984) (foreclosure sale). Though not bound by this precedent, we acknowledge the points in law set out therein as to the effect of a bankruptcy court annulling a stay. However, we do not see them on point with the issue of this case as

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

they deal with the void/voidable issue of an action taken in violation of the automatic stay. *See Winters by & through McMahon v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996) (the Fourth Circuit declined on deciding the void/voidable issue, finding the plaintiff in the case lacked standing). The case at bar deals with an act taken in violation of North Carolina law governing a power of sale foreclosure upon the lifting of an automatic stay.

N.C. Gen. Stat. § 45-21.22(c) provides extra protection to a mortgagor against a power of sale foreclosure, even upon an annulment of a bankruptcy stay. The imposition of the federal stay triggers the protection of this provision. The extra protection afforded upon the lifting of the stay comports with the long-held principle in North Carolina to give the mortgagor the full statutory benefit under the procedures of a power of sale foreclosure. *See Clayton Banking Co. v. Green*, 197 N.C. 534, 538, 149 S.E. 689, 691 (1929); *Turner v. Blackburn*, 389 F. Supp. 1250, 1256-57 (W.D.N.C. 1975). It further strikes a balance so as not to be overly burdensome on a foreclosing trustee by abridging the necessary steps needed to be taken after their foreclosure sale has been upset by an automatic stay. Specifically, the foreclosing trustee is not required to comply with the notice and hearing procedure again, but need only re-advertise and resell in accordance "with the provisions of G.S. 45-21.16A, 45-21.17, and 45-21.17A." N.C. Gen. Stat. § 45-21.22(c).

The additional procedural protection against the power of sale foreclosure under state law is in line with the intent behind the federal automatic stay:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97. Both the automatic stay provision, and the requirement for re-advertisement and resale of a power of sale foreclosure upon relief from that stay, serve to protect the mortgagor/debtor. North Carolina is within its right to extend that protection in the case of foreclosure proceedings. A search of North Carolina law has revealed no similar debtor protections triggered by

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

the lifting of an automatic stay that would frustrate giving retroactive effect to action taken in violation of a stay (such as filing a civil complaint). And due to the harsh remedy of a power of sale foreclosure, a remedy of last resort, North Carolina's limited provision qualifying the effect on an annulment of a stay in this context is not preempted by the federal statutory language. *See Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 344 S.E.2d 555, *disc. review denied*, 318 N.C. 284, 348 S.E.2d 344 (1986) (North Carolina foreclosure procedures should be resolved in favor of preserving the equitable power of the mortgagor).

### III. Application of the law

The crux of defendant's claims in this case is their reliance on the trustee's deed entered in the Cumberland County registry in June of 1995 after Source One had foreclosed on the Subject Real Property. Because we conclude this deed invalid both on the date of recordation, 23 June 1995, and also anytime after 15 January 1996, we hold that defendant's reliance is misplaced and that at no point did this recorded trustee's deed afford Source One, Cumberland County, or the McLeans a link to legal title in the Subject Real Property.

### A. 23 June 1995 Recordation

On 15 May 1995, Source One was the last and highest bidder of the foreclosure trustee's public sale of the Hornes' property. However, acting within their 10-day upset bid period, the Hornes filed for Chapter Thirteen bankruptcy and stayed the foreclosure. *See* 11 U.S.C. § 362 (2003). At that point the sale could not be completed and no parties' rights as to the property under the foreclosure action were yet "fixed." *See* N.C. Gen. Stat. § 45-21.27 (2003). It is undisputed that when the foreclosure trustee filed the trustee's deed on 23 June 1995, albeit without notice of the automatic stay, that the deed at that time was in violation of the stay while the Hornes were in the midst of a bankruptcy proceeding and the state law 10-day upset period had not yet run.

### B. On or after 15 January 1996

The more difficult issue as to the validity of the 23 June 1995 deed lies within defendant's contention that, when the 15 January 1996 deadline from Judge Small's order came and went, the federal stay frustrating the ability of the foreclosing trustee to go forward with the state foreclosure action was annulled. Defendant claims this annulment gave retroactive legal validity to the 23 June 1995 recorded deed

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

in the name of Source One, and therefore validated the subsequent chain of title linked to this deed. We do not agree.

The 23 June 1995 deed was procured from a sale made before the expiration of the ten-day upset bid period, and thus no parties' rights were ever "fixed" as to the Subject Real Property and nothing could be legally recorded. For that reason, Judge Small's order denying the motion to annul the stay, conditioned on the fact that debtors must sell by 15 January 1996, states: "The automatic stay shall continue in full force and effect so as to prevent finalization of the foreclosure proceeding by the Movant." Upon lifting the stay as of 15 January 1996, the foreclosing trustee was still required to comply with N.C. Gen. Stat. § 45-21.22(c).

When Judge Small's condition ripened to annul the stay, we believe the annulment's retroactive effect applied only to the foreclosure proceeding as long as it otherwise complied with state law. This would put title back into the hands of the party who moved to annul the stay, the foreclosing trustee. This trustee would have the ability to later conclude the sale and properly record the deed in accord with applicable state law. The clear language of Judge Small's order did just this. The order allowed that the "movant," the foreclosing trustee, "be deemed the owner of the Real Property and entitled *to pursue* any and all nonbankruptcy remedies to obtaining possession of the Real Property" upon lifting of the stay. (Emphasis added.) We read "pursue" to mean the trustee was then able to re-institute a sale with the parties to the original foreclosure sale of 15 May 1995. Had Judge Small intended to give title to Source One pursuant to their highest bid at the original foreclosure sale, his order would have stated so. Instead he stated, "Adequate protection of Source One's interests has been provided by the terms of the Amended Chapter 13 Plan and by reason of an equity cushion."

Upon the "lifting" of the stay, the foreclosing trustee was to pursue foreclosure by again advertising and selling the property in accordance with the provisions of N.C. Gen. Stat. §§ 45-21.16A, ·45-21.17, and 45-21.17A. *See* N.C. Gen. Stat. § 45-21.22(c). The foreclosing trustee properly conducted the notice and hearing procedure for the 15 May 1995 foreclosure sale, and was given the benefit of this in Judge Small's order which seems to mirror the state law. Both N.C. Gen. Stat. § 45-21.22(c) and Judge Small's order required defendant to take some action (*i.e.*, "pursue") upon the dissolution of the stay. The foreclosing trustee did not take the necessary steps to finalize foreclosure proceedings in light of the stay being lifted.

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

## Beneficial's Chain of Title

### I. Satisfaction of the Deed of Trust

Based on our analysis of a North Carolina power of sale foreclosure as affected by the federal bankruptcy code, we now examine the validity of Beneficial's alleged chain of title.

When a mortgage or deed of trust secures the payment of a specific debt, the determinable estate of the mortgagee or trustee terminates the very instant the debt is paid. *Barbee v. Edwards*, 238 N.C. 215, 218, 77 S.E.2d 646, 649 (1953). "The debt secured is for the life of the mortgage and gives it vigor and efficacy. The essential effect and consequence of the discharge of the mortgage debt is the discharge of the mortgage itself." *Manufacturing Co. v. Malloy*, 217 N.C. 666, 668, 9 S.E.2d 403, 404 (1940). " '[O]rdinarily a sale conducted under the power after full payment of the debt is invalid and ineffectual to convey title to the purchaser.' " *Kyles v. Holding Corp.*, 5 N.C. App. 465, 467, 168 S.E.2d 502, 503 (1969) (citations omitted).

From 15 January 1996 to 25 March 1996 no party to this suit took requisite steps in attaining record title to the Subject Real Property. On 25 March 1996, the Hornes' son, Douglas, made the payment due and owing on the specific debt underlying the deed of trust to Source One. On this same day, a general warranty deed was recorded conveying the Hornes' Subject Real Property to Douglas. Also on 25 March 1996, Douglas recorded a deed of trust in favor of Beneficial to secure the $50,000 line of credit. Pursuant thereto, on 24 June 1996, Source One filed a Certificate of Satisfaction cancelling the deed of trust it held for the Hornes on the debt of $57,050 and provided record notice that Source One no longer had any legal interest in the Subject Real Property. At that point Douglas had equitable title in the Subject Real Property, and Beneficial had a valid $50,000 lien on the property pursuant to a deed of trust. This first deed of trust was satisfied when a second deed of trust issued on the Subject Real Property benefiting Beneficial in the amount of $73,600.

### II. Cumberland County Tax Foreclosure Sale

When a county conducts a tax foreclosure sale, the property is to be "sold in fee simple, free and clear of all interests, rights, claims, and liens." N.C. Gen. Stat. § 105-374(k) (2003). Therefore, the effect of a judgment foreclosing a tax lien on real property extinguishes all rights, title and interests in the property subject to the foreclosure, including a claim based on adverse possession. *Overstreet v. City of*

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

*Raleigh*, 75 N.C. App. 351, 353-54, 330 S.E.2d 643, 645 (1985). However, N.C. Gen. Stat. § 105-374(c) requires:

> The listing taxpayer . . . , the current owner, all other taxing units having tax liens, all other lienholders of record, and all persons who would be entitled to be made parties to a court action . . . to foreclose a mortgage on such property, shall be made parties and served with summonses in the manner provided by [Rule 4].

*Id.* In an action to foreclose a tax lien, all persons having an interest in the equity of redemption should be made parties by name, and judgment rendered in such proceeding is void as to any person having such interest who are not made parties. *Wilmington v. Merrick*, 231 N.C. 297, 299, 56 S.E.2d 643, 645 (1949) (*Wilmington I*). "Foreclosure is an equitable proceeding and the law as interpreted and applied in this State, has uniformly commanded a day in Court for parties in interest." *Guy v. Harmon*, 204 N.C. 226, 227, 167 S.E. 796, 797 (1933). Furthermore, "[o]ne who purchases at a tax sale does so without warranty[.] He is chargeable with knowledge that a commissioner's deed is no more than a quitclaim deed. . . . It is the duty of one who would purchase a tax title to investigate, or cause to be investigated, all sources of title[.]" *Wilmington v. Merrick*, 234 N.C. 46, 47-48, 65 S.E.2d 373, 375 (1951) (*Wilmington II*).

As set out above, Source One recorded a Certificate of Satisfaction on the deed of trust held for the Subject Real Property. At that point they no longer held a record interest in the property. However, in Cumberland County's complaint for a tax lien foreclosure, Source One was the only named party. And, as Source One held no interest in the Subject Real Property, they did not respond to the complaint. Cumberland County received a default judgment.

Pursuant to N.C. Gen. Stat. § 105-374(c), we hold that the Cumberland County foreclosure action was void as to Douglas and Beneficial, both being the only record interest holders at the time the action was commenced. Their interest remains unaffected by said foreclosure action, and these parties must be named in any future attempt by the County to foreclose pursuant to their valid tax lien.

Furthermore, because Douglas and Beneficial were of record interest in the Subject Real Property the day the tax foreclosure was filed, the McLeans are charged with constructive notice of these recorded interests, and are unable to avail themselves to any argument as being a good faith purchaser for value. As to their commis-

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

sioner's deed, we find *Wilmington II* controlling. As the Supreme Court did in *Wilmington II*, we also apply with rigor the principle of *caveat emptor* to the purchaser of real estate at a tax sale. *Wilmington II*, 234 N.C. at 47, 65 S.E.2d at 374. It was the duty of the McLeans to investigate the tax title which they purchased, a duty which would have revealed the same competing chain of title in Beneficial and Douglas that Cumberland County should have discovered when determining who required notice to the foreclosure sale. As was aptly stated by our Supreme Court in a prior decision which was also based on *Wilmington II*: "The defendant purchased a 'pig in the poke,' but when he opened the bag he found no pig. For him the situation is unfortunate. It is nonetheless a situation for which the law affords no relief." *Quevedo v. Deans*, 234 N.C. 618, 622, 68 S.E.2d 275, 278 (1951).

We do not believe, as defendants contend, that this holding places an unreasonable burden on title searches in North Carolina. Beneficial, in their opposition to defendants' Motion for Summary Judgment, filed the persuasive and unrebutted affidavit of Robert S. Thompson. Mr. Thompson, being a board certified specialist in real property law with nearly 20 years' experience and familiar with searching title in Cumberland County, testified to the following:

> A reasonably prudent attorney exercising the standard of care for attorneys in Cumberland County while performing a title search of the subject property between June 19, 1995 and September 28, 1999 would have examined the Cumberland County special proceedings file 95 SP 311 upon seeing the Source One Trustee's Deed of record. This attorney would then have seen a Recall Writ of Possession referencing the filing of a bankruptcy proceeding by the Hornes that interrupted the foreclosure proceeding. The notation of bankruptcy puts the title searcher on notice of the questionable validity of the Source One Trustee's Deed. This attorney should then have proceeded to check the bankruptcy records and would have determined that the mortgagor filed a Chapter 13 bankruptcy proceeding within ten days of the report of the foreclosure sale and that an automatic stay pursuant to 11 U.S.C. § 362 prohibited the completion of the foreclosure sale and that Source One Trustee's Deed was invalid. In addition the file in 95 SP 311 would have put the attorney on notice of other interests in the subject property.

If the automatic stay is to be given any credence and provide protection to debtors and creditors alike, we are compelled to con-

BENEFICIAL MTGE. CO. OF N.C., INC. v. BARRINGTON & JONES LAW FIRM, P.A.

[164 N.C. App. 41 (2004)]

clude this to be within the reasonable diligence of a title examiner. To conclude otherwise is to put the burden on the debtor, in the midst of a bankruptcy proceeding, to keep their title clear from such invalid or premature deeds, when it is their understanding that a filing for bankruptcy within the upset bid period will already provide such protection. Until the legislature decides a better way to give a title examiner notice of a bankruptcy stay, we agree with Mr. Thompson that the burden falls on the party conducting the title search to check a county's special proceeding file when determining the validity of a trustee's deed issued pursuant to a power of sale foreclosure.

## Judicial Estoppel

Defendants contend that Beneficial's claim to quiet title and relief from the Cumberland County tax foreclosure should be judicially estopped. This contention is based on the argument that Beneficial's claims against defendants are inconsistent with the malpractice claim against the Barrington Law Firm which has since been dismissed with prejudice. We disagree.

The test for judicial estoppel in North Carolina is stated as "a harsh doctrine and requires at a *minimum* that the party against whom the doctrine is asserted [(1)] intentionally have [(2)] changed its position in order to gain an advantage." *Medicare Rentals, Inc. v. Advanced Services,* 119 N.C. App. 767, 771, 460 S.E.2d 361, 364, *disc. review denied,* 342 N.C. 415, 467 S.E.2d 700 (1995) (emphasis added). In *Medicare Rental* we framed these two elements as (1) changing position, and (2) intentionally misleading.

The record before us shows no evidence of Beneficial intentionally misleading the court by seeking to quiet title and obtaining relief from a tax foreclosure sale. This action was initially brought as a malpractice suit against Beneficial's attorney, the Barrington Law Firm. These parties were brought in under the separate and distinct action for quieting title and relief from the tax foreclosure sale. At a minimum, the record reflects negligence by both parties as to their title searches, attested to in Mr. Thompson's affidavit. We do not find that Beneficial's malpractice claim against the Barrington Law Firm as to its negligent representation of title is inconsistent with the claims at bar against a competing interest in that same title. These are alternative claims: "A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on

legal or on equitable grounds or on both." N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) (2003). By dismissing the malpractice claim, Beneficial merely limited their potential avenue of relief.

After a thorough review of the applicable state and federal law, the record, exhibits, and briefs, we affirm the trial court's grant of summary judgment in favor of Beneficial.

Affirmed.

Judges HUNTER and LEVINSON concur.